IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARTY EUGENE BOX and | ) | Case No. 10-20086 |
| TAMMY JEAN BOX, | ) | |
| | ) | |
| Debtors. | ) | |

<u>ORDER DENYING MOTION FOR RELIEF FROM STAY</u>

BAC Home Loans Servicing LP f/k/a Countrywide Home Loans Servicing ("BAC") seeks relief from the automatic stay to allow it to exercise its rights under state law as to the Debtors' real property. The Debtors do not oppose the motion, but the Chapter 7 Trustee has challenged BAC's standing to seek relief from the stay. The Trustee asserts that the Note and Deed of Trust were not properly assigned to BAC and, because it is not the holder of the Note and Deed of Trust, it lacks standing to seek relief from the stay to enforce those documents. This is a core proceeding under 28 U.S.C. § 157(b)(2) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons that follow, the Court finds that BAC has not proven that it is the holder of the Note. Therefore, it lacks standing, so its motion for relief from stay will be denied.

On January 21, 2009, Debtors Marty E. Box and Tammy J. Box executed a promissory note in the original principal amount of $164,836, for the purchase of their home. The Note was made payable to Taylor, Bean & Whitaker Mortgage Corp. and

its successors and assigns.  The Note is secured by a Deed of Trust on the home.  The

Deed of Trust identifies the beneficiary as "Mortgage Electronic Registration Systems,

Inc. ('MERS')," and states that "MERS is a separate corporation that is acting solely

as nominee for Lender and Lender's successors and assigns."  The "Lender" is

identified as Taylor, Bean & Whitaker Mortgage Corp.  The Deed of Trust was

recorded with the Hickory County Recorder of Deeds on January 28, 2009.

BAC states that Taylor, Bean & Whitaker Mortgage Corp. ("Taylor Bean")

transferred the Note and Deed of Trust to BAC on August 25, 2009, although the only

evidence of any such transfer is an affidavit by BAC's representative, discussed more

fully below.

The Debtors filed this Chapter 7 bankruptcy case on January 20, 2010, and

BAC filed the instant Motion for Relief from Stay on February 24, 2010.  As stated,

the Chapter 7 Trustee maintains that there was no proper assignment of the Note and

Deed of Trust to BAC and, therefore, BAC lacks standing to seek relief from the stay.

To obtain relief from the stay, BAC must be a party in interest[1] and have

standing.[2]

---

[1]  11 U.S.C. § 362(d) ("On request of a party in interest and after notice and  a hearing,
the court shall grant relief from the stay . . . .").

[2]  Fed. R. Civ. P. 17(a)(1), made applicable here by Fed. R. Bankr. P. 7017.  *In re
Wilhelm*, 407 B.R. 392, 398 (Bankr. D. Idaho 2009) (discussing standing and real-party-in-
interest requirements); *In re Kang Jim Hwang*, 396 B.R. 757, 768-69 (Bankr. C.D. Cal. 2008)

The Missouri Court of Appeals has recently discussed assignment of notes and deeds of trust in *Bellistri v. Ocwen Loan Servicing, LLC*.[3]  In that case, the borrower executed a promissory note in favor of lender BNC Mortgage Inc.  As here, the deed of trust did not name BNC as the beneficiary, but instead named Mortgage Electronic Registration System (MERS) solely as BNC's nominee.  The promissory note made no reference to MERS.  The note and deed of trust both required that payments be made to the lender, not MERS.  These facts regarding the loan documents are, for all relevant purposes, identical to those in the case at bar.

Subsequently, a third party, Robert Bellistri, purchased the property at a tax sale.  Bellistri sent BNC a notice of redemption as required by Missouri statute.  After the collector of revenue issued Bellistri a collector's deed, MERS, as nominee for BNC, assigned the deed of trust to Ocwen.  The assignment of the deed of trust contained language that the assignment was made "together with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due and to become due."  Bellistri then filed a quiet title action to eject the original borrower from the property.  Bellistri moved to add Ocwen as a necessary party because the assignment of the deed of trust to Ocwen had been

_____

(same).

    [3]  284 S.W.3d 619 (Mo. Ct. App. E.D. 2009).

recorded and Ocwen was, therefore, the recorded grantee as to the deed of trust.

Granting summary judgment in favor of Bellistri, the circuit court found that Ocwen

lacked standing in the action. Ocwen appealed.

In affirming the circuit court's decision, the Missouri Court of Appeals

discussed the law of mortgages in order to determine Ocwen's interest in the

property.[4] The Court explained:

> Generally, a mortgage loan consists of a promissory note and security
> instrument, usually a mortgage or a deed of trust, which secures payment
> on the note by giving the lender the ability to foreclose on the property.
> Typically, the same person holds both the note and deed of trust. In the
> event that the note and the deed of trust are split, the note, as a practical
> matter becomes unsecured. The practical effect of splitting the deed of
> trust from the promissory note is to make it impossible for the holder of
> the note to foreclose, unless the holder of the deed of trust is the agent of
> the holder of the note. Without the agency relationship, the person
> holding only the note lacks the power to foreclose in the event of default.
> The person holding only the deed of trust will never experience default
> because only the holder of the note is entitled to payment of the
> underlying obligation. The mortgage loan [becomes] ineffectual when
> the note holder [does] not also hold the deed of trust.[5]

Regarding assignments:

> When the holder of the promissory note assigns or transfers the note, the
> deed of trust is also transferred. An assignment of the deed of trust
> separate from the note has no "force." Effectively, the note and the deed
> of trust are inseparable, and when the promissory note is transferred, it

---

[4] In order to have standing in the quiet title action, Ocwen had to have an "interest" in
the property. *Id.* at 623.

[5] *Id.* (citing *Restatement (Third) of Property (Mortgages)*, § 5.4 Comment).

4

> vests in the transferee "all the interest, rights, powers and security conferred by the deed of trust upon the beneficiary therein and the payee in the notes."[6]

Thus, if the note is properly assigned, the deed of trust automatically goes with it, and the note is not split from the deed of trust. However, that is not necessarily the case when it is the deed of trust which is assigned – if the note is not also assigned, the assignment of the deed of trust is, for all practical purposes, ineffectual because the note and deed of trust have become split.

In *Bellistri*, when MERS purported to assign the deed of trust to Ocwen, MERS also apparently attempted to transfer the note because the deed of trust stated that its assignment to Ocwen was "together with any and all notes and obligations therein described."[7] The Court of Appeals did not comment on the issue of whether such a notation on the assignment of the deed of trust effectively also assigned the note. However, the Court of Appeals said, *BNC* was the holder of the promissory note, and since there was no evidence that MERS ever held the promissory note or that BNC gave MERS the authority to transfer the promissory note, MERS did not have such authority to transfer the promissory note.[8] Thus, the language in the assignment of the

---

[6] *Id.* (citing *George v. Surkamp*, 336 Mo. 1, 76 S.W.2d 368, 371 (1934); *St. Louis Mut. Life Ins. Co. v. Walter*, 329 Mo. 715, 46 S.W.2d 166, 170 (1931)).

[7] *Id.*

[8] *Id.* at 623-24.

5

deed of trust purporting to transfer the promissory note was ineffective.[9]  In other

words, "MERS never held the promissory note, thus its assignment of the deed of trust

to Ocwen separate from the note had no force."[10]

Here, as in *Bellistri*, the Note is made payable only to Taylor Bean;  MERS is

mentioned nowhere in the Note.  And, as in *Bellistri*, MERS is identified in the Deed

of Trust as the beneficiary, solely as Taylor Bean's nominee.

With regard to the purported assignment of the loan documents to BAC, the

evidence in the case at bar is both scant and suspect.  Specifically, at an April 21,

2010, hearing on BAC's Motion for Relief from Stay, counsel for BAC submitted a

notarized Affidavit dated April 19, 2010, partially in fill-in-the-blank form, which

states, in its entirety:

> CAMETRICE JACKSON, first being duly sworn, on his/her oath states
> that he/she is the LOAN SVC SPECIALIST of BAC Home Loans
> Servicing, LP f/k/a Countrywide Home Loans Servicing, LP and is
> authorized by said entity to sign this Affidavit.  This is to certify that
> BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans
> Servicing, LP is the holder of the Promissory Note and Deed of Trust
> dated January 21, 2009, executed by Marty E. Box and Tammy J. Box,
> in the original principal amount of $164,836.00.  The Promissory Note
> and Deed of Trust were transferred from TAYLOR BEAN &
> WHITAKER MORTGAGE CORP to BAC Home Loans Servicing, LP
> f/k/a Countrywide Home Loans Servicing, LP on 8/25/2009.

---

[9]  *Id.*

[10]  *Id.* at 624.

6

The *only document* attached to the Affidavit was an Assignment of Deed of Trust, *dated February 18, 2010*, in which "Mortgage Electronic Registration Systems, Inc., solely as nominee for Taylor, Bean & Whitaker Mortgage Corp." purports to assign the Deed of Trust to "BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP."  The February 18 Assignment states that it is "[t]ogether with any and all notes and obligations therein described or referred to, the debt respectively secured thereby and all sums of money due thereon, with interest thereon, and attorneys' fees and all other charges."  No documents evidencing an August 25, 2009 assignment were attached, nor were any of the loan documents themselves.

At the conclusion of the hearing, the parties were granted time in which to submit briefs on the issue.  BAC did submit a brief, and attached a copy of the Note, the Deed of Trust, and another copy of the Affidavit quoted above.  Notably, BAC attached no documents whatsoever to support the Affidavit's representation that the Note and Deed of Trust were assigned at all, much less on August 25, 2009, as represented in the Affidavit.  Moreover, the Affidavit does not state with any specificity how BAC purportedly became the "holder" of the Note and Deed of Trust or how the documents were "transferred" to BAC.  Although I overruled the Trustee's objection to the admission of the Affidavit and admitted it into evidence at the

7

hearing,[11] the Affidavit, in and of itself, is self-serving, lacks credibility, and is entirely unpersuasive on the question of whether the Note and Deed of Trust were properly assigned to BAC. Indeed, in *In re Wilhelm*, the court held that a statement identical to the one in BAC's Affidavit, namely that BAC is the "holder of the Promissory Note and Deed of Trust," is a legal conclusion, not a fact, and inappropriate for such an affidavit.[12] Moreover, the court said, it did not answer the critical question of fact, which is: Who has possession of the original note?[13]

The only actual evidence of any assignment at all in this case is the February 18, 2010 Assignment which was attached to the Affidavit submitted at the hearing. The fact that the February 18, 2010 Assignment was made after the bankruptcy case was filed does not render it *per se* invalid in that there is no rule prohibiting a creditor from assigning its claim postpetition. However, the February 18 "assignment" contradicts the date stated in the Affidavit and, particularly since no August 25

---

[11]  As the Trustee suggests, the Affidavit is hearsay. In addition, the Federal Rules of Evidence provide that, generally, to prove the content of a writing, the original is required. Fed. R. Evid. 1002. Duplicates are permitted unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original. Fed. R. Evid. 1003. Although I received the Affidavit into evidence at the hearing, I emphasize that, since the Affidavit has been challenged, it cannot substitute for production of the Note.

[12]  407 B.R. 392, 402-03 (Bankr. D. Idaho 2009).

[13]  *Id.* at 403.

documents were attached, makes the Affidavit even more suspect.[14]

That said, even looking to the February 18 Assignment, that document has the same fatal flaw that the one in *Bellistri* did: Even assuming that the holder of a note and deed of trust can effectively assign the note by including such language only on the deed of trust assignment (an issue not decided by *Bellistri*), there is no evidence in this case that MERS has ever held the Note, or that MERS was Taylor Bean's agent for purposes of assigning the Note. Perhaps MERS had the authority to assign the Deed of Trust because it was named as a nominee beneficiary, a question I do not decide here.[15] However, as stated, MERS was not named in any capacity in the Note, and there was no evidence that it otherwise had the authority to assign the Note. Consequently, because MERS has not demonstrated that it had the authority to assign the Note, its statement on the Deed of Trust Assignment purporting to do so could not be effective.[16]

---

[14] If the Note and Deed of Trust had been assigned on August 25, 2009, as stated in the Affidavit, then why was a subsequent assignment necessary on February 18, 2010?

[15] *See Landmark Nat'l Bank v. Kesler*, 216 P.3d 158 165-69 (Kan. 2009), for a discussion of MERS' legal status as a sole "nominee" in a mortgage.

[16] *Accord In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009) (holding that moving creditors lacked standing to obtain relief from stay because they were not "holders" of deeds of trust because the notes were not payable to the movants or endorsed, nor were they "nonholders in possession of the instrument with rights of a holder," because they did not prove actual possession of the notes). *See also Landmark Nat'l Bank v. Kesler*, 216 P.3d 158 (Kan. 2009) (holding that MERS was not entitled to intervene in a foreclosure action, in part because, as a mere "nominee" of the lender under the mortgage, it had no direct property interests at stake).

This case does present one fact that was not addressed in *Bellistri*. Here, the Note contains a blank endorsement by Taylor Bean.[17] Hence, BAC asserts that Taylor Bean transferred the *Note* to it, and that the Deed of Trust follows the assigned Note.[18]

As relevant here, § 400.3-301 of the Missouri Statutes provides that a party may enforce a promissory note if it is either (1) the holder of the promissory note, or (2) a nonholder in possession of the instrument who has the rights of a holder.[19] "'Holder' with respect to a negotiable instrument, means the person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession."[20]  "'Negotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder."[21] "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the

---

[17]  The last page of the Note bears a stamp, signed by a vice president of Taylor Bean, which states: "Without recourse, pay to the order of _____  By: Taylor, Bean & Whitaker Mortgage Corp."

[18]  "When the holder of the promissory note assigns or transfers the note, the deed of trust is also transferred." *Bellistri*, 284 S.W.3d at 623.

[19]  Mo. Rev. Stat. § 400.3-301.

[20]   Mo. Rev. Stat. § 400.1-201(20).  There appears to be no dispute that the Note is a "negotiable instrument" as that term is defined in § 400.3-104.

[21]  Mo. Rev. Stat. § 400.3-201(a).

instrument."[22] "Except for negotiation by a remitter, if an instrument is payable to an

identified person, negotiation requires transfer of possession of the instrument and its

endorsement by the holder.  If an instrument is payable to bearer, it may be negotiated

by transfer of possession alone."[23]  Therefore, because the Note is made payable to

Taylor Bean, in order to transfer the Note to BAC, Taylor Bean had to both transfer

possession of the Note to BAC, and endorse it.

Because the Note here contains a blank endorsement, § 400.3.-205(b) applies.

That section provides:

> If an endorsement is made by the holder of an instrument and it is not a
> special endorsement, it is a "blank" endorsement.  When endorsed in
> blank, an instrument becomes payable to bearer and may be negotiated
> by transfer of possession alone until specially endorsed.[24]

"'Bearer' means the person in possession of an instrument, document of title, or

---

[22]  Mo. Rev. Stat. § 400.3-203.  According to Note 1 to § 3-203:

[A] person who has an ownership right in an instrument might not be a person
entitled to enforce the instrument. For example, suppose X is the owner and
holder of an instrument payable to X. X sells the instrument to Y but is unable to
deliver immediate possession to Y. Instead, X signs a document conveying all of
X's right, title, and interest in the instrument to Y. Although the document may be
effective to give Y a claim to ownership of the instrument, Y is not a person
entitled to enforce the instrument until Y obtains possession of the instrument. No
transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y.

[23]  Mo. Rev. Stat. § 400.3-201(b).

[24]  Mo. Rev. Stat. § 400.3-205(b).

11

certificated security payable to bearer or endorsed in blank."[25]   As the Trustee suggests, as to bearer paper, an entity is only entitled to enforce the obligation if it proves that it holds the original or complies with the lost not requirements discussed later.[26] This requirement serves an important purpose.  As stated, under Missouri law, the transfer of a note serves to also transfer the transferor's rights under a deed of trust, regardless of whether that transfer is recorded.  Possession of the note insures that this creditor, and not an unknown one, is the one entitled to exercise rights under the deed of trust, and that the debtor will not be obligated to pay twice.[27]

BAC has not produced the original Note, nor has it even produced a witness stating that BAC is in possession of the original Note.  Indeed, even the Affidavit, for what it is worth, fails to make such a statement.[28]   Since BAC has failed to

---

[25]  Mo. Rev. Stat. § 400.1-201(5).

[26]  *See, e.g., Wohlschlaeger v. Dorsey*, 206 S.W.2d 677, 680 (Mo. Ct. App. 1947) (the effect of an endorsement of a note in blank "was to render the same payable to bearer so that it might thereafter be negotiated by mere delivery.").

[27]  *See Affiliated Acceptance Corp. v. Boggs*, 917 S.W.2d 652, 656 (Mo. Ct. App. W.D. 1996) ("To recover on a promissory note, the plaintiff must (1) produce the note (2) signed by the maker and (3) show the balance due.  Presentment of the note or satisfactory proof that it has been lost or destroyed are essential elements of the case because the instrument itself is the exclusive ground for the cause of action.") (citations and internal quotation marks omitted).

[28]  I do not hold here that an affidavit containing such a statement would suffice.  As stated above, the Affidavit is hearsay.  In addition, the Federal Rules of Evidence provide that, generally, to prove the content of a writing, the original is required.  Fed. R. Evid. 1002. Duplicates are permitted unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.  Fed. R. Evid. 1003.  On the other hand, some courts have found a bank officer's

demonstrate that the loan was properly assigned to it by Taylor Bean, it lacks standing to seek relief from the stay.

Perhaps BAC can correct the problem it currently faces with standing, as well as the Trustee's likely attack on the validity of the lien BAC asserts. The most obvious way would be for BAC to produce the original Note, either endorsed to it or endorsed in blank. If BAC can do that, such that the evidence sufficiently establishes proper assignment of the Note to BAC, then, as stated above, the Deed of Trust followed, and the February 18 Assignment would be, in effect, a nullity. BAC would, in that event, be the holder of both the Note and Deed of Trust.

On the other hand, if BAC cannot produce the original Note (or satisfy the requirements for a lost note under §400.3-309), then assuming that the February 18 Assignment of the Deed of Trust is valid (*i.e.,* assuming MERS had authority as nominee beneficiary to make such an assignment of the Deed of Trust), the Note and Deed of Trust may have become split, in that Taylor Bean still holds the Note, but BAC holds the Deed of Trust. In that case, the Trustee might prevail in challenging

---

testimony that the bank is actually in physical possession of the original note, along with a copy of the original, can suffice. *See, e.g., In re Relka*, 2009 WL 5149262 (Bankr. D. Wyo. Dec. 22, 2009). In addition, although BAC has not alleged that the original Note has been lost, I would mention that the Missouri Statutes provide a method for dealing with such a situation. *See* Mo. Rev. Stat. § 400.3-309(a). However, among other things, in order to take advantage of that statute, BAC is required to prove that it was in possession of the Note and entitled to enforce it when loss of possession occurred. *Id.*

13

the lien.  However, the court in *Landmark Nat'l Bank v. Kesler* has suggested that MERS may not have had the authority to assignment of the Deed of Trust, either.  If that is correct, then Taylor Bean may still hold both the Note and the Deed of Trust.  And, as stated, there is no rule prohibiting a postpetition assignment of a claim to another party such as BAC.

This Order does not go further than necessary, and specifically does not decide whether the structure of MERS is fatally flawed under Missouri law because, *e.g.,* it splits the note and deed of trust between different entities.  I am well aware that there would be far-reaching consequences from such a determination on creditors holding what they believed were mortgage loans, and also on debtors, who may or may not be able to obtain new financing in order to purchase their homes from the estate at current value.  Therefore, I would hope to decide those issues in a proceeding in which the promissory note is produced, and in which evidence is offered as to the relationship between MERS and lenders for whom it purports to act, as well as the powers granted to it by them.  Such evidence might include, for example, an agency agreement if one exists.

All I find here is that BAC has not proven that it holds the Note.  Thus, it has not established that it is a party in interest or that it has standing to seek relief from the stay.

ACCORDINGLY, the Motion for Relief from Stay filed by BAC Home Loans

Servicing LP f/k/a Countrywide Home Loans Servicing is DENIED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 6/3/2010

15